IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TONI MILES CULUMBER**                                                        **PLAINTIFF**

**v.**                                                        **Civil No. 1:23cv219-HSO-BWR**

**MORRIS NETWORK OF
MISSISSIPPI, INC.** *doing business as*
*WXXV-TV*, **MORRIS
MULTIMEDIA, MORRIS NETWORK,
INC., and MORRIS MULTIMEDIA, INC.**                          **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS
MORRIS NETWORK OF MISSISSIPPI, INC., MORRIS MULTIMEDIA,
MORRIS NETWORK, INC., AND MORRIS MULTIMEDIA, INC.'S MOTION
[107] FOR SUMMARY JUDGMENT**</u>

Defendants Morris Network of Mississippi, Inc., doing business as WXXV-TV, Morris Multimedia, Morris Multimedia, Inc., and Morris Network, Inc.'s Motion [107] for Summary Judgment seeks dismissal of Plaintiff Toni Miles Culumber's employment discrimination claims against them. Because Plaintiff has not pointed to competent summary judgment evidence sufficient to create any genuine issue of material fact, the Motion [107] should be granted, and this case dismissed with prejudice.

## I. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

Plaintiff Toni Miles Culumber ("Plaintiff") is a roughly 49-year-old female[1] who filed suit in this Court on August 29, 2023, bringing claims of employment

---

[1] Plaintiff's Second Equal Opportunity Employment Commission Charge [107-1], filed on April 21, 2021, stated that she was then a "45-year-old female." EEOC Charges [107-1] at 2.

discrimination against Defendants Morris Network of Mississippi, Inc. ("WXXV-TV"), doing business as WXXV-TV, Morris Multimedia, Morris Multimedia, Inc., and Morris Network, Inc. (collectively "Defendants"). *See* Compl. [1] at 1; Am. Compl. [33] at 1-4. Plaintiff was hired by WXXV-TV as an assignment editor on December 20, 2013. *See* Hire Letter [107-3] at 1. On April 18, 2019, she was moved from the position of assignment editor to morning news manager for the purpose of training several new hires. *See* Morning News Manager Duties Letter [107-5] at 1; COO Berry Letter  [107-8] at 2. The plan was for Plaintiff to return to her role as an assignment editor once the new employees were comfortable in their roles. *See* COO Berry Letter [107-8] at 2.

On August 27, 2019, Plaintiff filed an internal complaint against a female coworker, Lindsey Goodwin ("Goodwin"), and requested that she be fired. *See* Culumber Internal Complaint [107-7] at 1. On December 10, 2019, Plaintiff filed another internal complaint against Goodwin and made allegations of discrimination against her supervisor Joe Sullivan ("Sullivan"). *See id.* at 4; COO Berry Letter [107-8] at 1. Defendant Morris Network, Inc.'s Chief Operating Officer, Bobby Berry ("Berry"), requested that Plaintiff provide evidence of this discrimination, but she did not. *See* Culumber Internal Complaint [107-7] at 1-4; COO Berry Letter [107-8] at 1-2. Goodwin responded with an internal complaint against Plaintiff on December 13, 2019. COO Berry Letter [107-8] at 1.

Because Plaintiff's dispute with Goodwin was "not conducive to a productive and enjoyable workday" and her move to morning news manager was intended to be

temporary, Defendants returned Plaintiff to her role as assignment editor on February 17, 2020. *Id.* at 1-3. Plaintiff was later shifted to the position of multimedia journalist in March 2020, *see* Culumber Resume [111-1] at 72, and in October 2020, she was given the title of senior reporter,[2] *see* Senior Reporter Hire Letter [107-9] at 4. Plaintiff's salary never decreased despite her various changes in positions. *See* Performance Reviews and Pay Increase Forms [107-4] at 8-11; Culumber W-2s [107-14] at 1-5.

Throughout her employment, Plaintiff received yearly performance reviews and annual two percent raises. *See id.* at 1-13; COO Berry Letter [107-8] at 1. In her early years with WXXV-TV, her reviews were mostly positive, but they grew more negative over time. *See* Performance Reviews and Pay Increase Forms [107-4] at 1-13. In response to her last two performance reviews, which were mostly negative, Plaintiff indicated in the box for employee comments that she did not agree with them. *See id.* at 10, 13.

Plaintiff also received two write-ups during her time at WXXV-TV. *See* 2019 Write-up [107-6] at 1; Plaintiff's Timeline of Internal Complaints [110-12] at 2. Specifically, she was written up in 2016 for insubordination arising out of a dispute with Sullivan, *see* Plaintiff's Timeline of Internal Complaints [110-12] at 2, and in 2019 she received a write-up for failing to inform a supervisor before not coming to work, *see* 2019 Write-up [107-6] at 1.

---

[2] Plaintiff's resume states that she became a senior reporter in August 2020. *See* Culumber Resume [111-1] at 72.

On March 6, 2021, Plaintiff requested seven days of paid time off ("PTO") to be used from Thursday, May 13, 2021, through Friday, May 21, 2021.  PTO Records [111-1] at 66; *see also* Time Off Detail and Explanation of PTO [107-10]. Defendants approved the PTO because, at the time Plaintiff made the request, she had sufficient PTO hours remaining to cover these days.  PTO Records [111-1] at 66; *see also* Time Off Detail and Explanation of PTO [107-10].   However, Plaintiff left work early on May 10, 2021, due to illness, and remained out through May 12, 2021. PTO Records [111-1] at 66; *see also* Time Off Detail and Explanation of PTO [107-10].  She used PTO for these days, PTO Records [111-1] at 66; *see also* Time Off Detail and Explanation of PTO [107-10], which caused her PTO balance to drop below the amount necessary to cover the PTO approved for May 13, 2021, through May 21, 2021, PTO Records [111-1] at 66; *see also* Time Off Detail and Explanation of PTO [107-10].  So, by May 20, 2021, Plaintiff only had a half-day remaining, and she thus exceeded her PTO by a half-day on May 20, 2021, and by a full day on May 21, 2021. *See* Time Off Detail and Explanation of PTO [107-10] at 3.  Plaintiff's paycheck was reduced to cover the unpaid time off she took on these days. *See id.* at 8.

Plaintiff worked on Monday, May 24, 2021, but on May 25, 2021, she was absent so that she could care for her mother and she did not return to work the remainder of that week.  *See* Resignation Letter [107-11] at 1.  Plaintiff also did not work on Monday, May 31, 2021, as it was a paid holiday, but on June 1, 2021, she came into WXXV-TV's offices around 6:24 a.m. and taped a Resignation Letter [107-

11] to the door of Sullivan's office. *See id.* The Resignation Letter [107-11] stated "[p]lease accept this formal letter of resignation from my employment here at WXXV-TV News 25, effective immediately, considering the circumstances." *Id.* at 1. The Letter went on to list many grievances Plaintiff had with Defendants regarding her pay, alleged demotions, PTO calculations, performance reviews, and alleged denial of promotions.[3] *See id.* at 1-2. Plaintiff claimed these actions were the result of discrimination and retaliation. *See id.* at 1-2.

After Plaintiff resigned, her health benefits form reflected that her health benefits were terminated on May 31, 2021, not June 1, 2021. *See* Supp. Mem. & Health Benefits Form [111-1] at 20. This resulted in a lapse of Plaintiff's health insurance later that year, which she appealed to the United States Department of Labor. *Id.* at 23-28. The Department of Labor contacted Defendants, who corrected the error and changed the separation date to June 1, 2021. *See* Dec. 2021 Letter [107-16] at 1; *see also* Dec. 2021 DOL Email Thread [112-1].

B.    Procedural History

During the course of and following her employment, Plaintiff filed three Equal Opportunity Employment Commission ("EEOC") Charges [107-1]. *See* EEOC Charges [107-1] at 1-4. The first Charge [107-1] ("EEOC Charge 1") was submitted on January 27, 2020, and alleged sex discrimination, equal pay violations, and retaliation for exercising her rights before the EEOC. *Id.* at 1. The second EEOC

---

[3] On February 17, 2020, Plaintiff sent an email along with her resume to Sullivan, as an unsolicited application for the position of anchor. Application Email [111-1] at 70. She has not submitted competent evidence that she applied for any other position. *See generally id.*; Mem. [110].

Charge [107-1] ("EEOC Charge 2"), filed on April 21, 2021, claimed that Defendants discriminated against Plaintiff on the basis of her age and sex. *Id.* at 2. On September 15, 2021, Plaintiff submitted her final EEOC Charge [107-1] ("EEOC Charge 3"), alleging that in retaliation for filing internal complaints and her previous EEOC Charges [107-1], Plaintiff's May 28, 2021, paycheck was reduced, and her employment was wrongfully terminated on May 31, 2021. *Id.* at 3-4.

Plaintiff also filed a complaint against Defendants with the Mississippi Department of Employment Security ("MDES") relating to the lapse in her insurance benefits. *See* MDES Decision [111-1] at 17. MDES denied her claim, but she appealed to an administrative law judge who that found her employment was terminated on May 31, 2021, and that she had been improperly denied health benefits ("MDES Decision"). *Id.* at 17-18. Defendants did not appear at or participate in the MDES proceedings. *Id.*

Plaintiff filed the present suit on August 29, 2023, and amended her Complaint [33] on September 30, 2024. *See generally* Compl. [1]; Am. Compl. [33]. The Amended Complaint [33] advances claims for wrongful termination and for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.[4] *See* Am. Compl. [33] at 7-31.

---

[4] The Amended Complaint [33] also asserted claims for false statements under 18 U.S.C. § 1001, Due Process and Equal Rights violations under the Mississippi and United States Constitutions, defamation, false light, fraud, misrepresentation, blacklisting, violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., violations of the Family and Medical Leave Act

Plaintiff claims Defendants discriminated against her on the basis of her sex and age under Title VII, the ADEA, the FLSA, and the EPA, and that she experienced retaliation under Title VII and the ADEA in the form of poor performance reviews, a failure to promote, demotions, wrongful termination, a hostile work environment, an improper denial of health benefits, and write-ups.  *See id.*  As for her ADEA claims, she only cites her age as the basis for her discrimination claims related to failure to promote and demotions and for her retaliation claims.  *See id.* at 23-24, 27-28.  After Defendants filed their Motion [107] for Summary Judgment, Plaintiff responded.  *See* Mot. [107]; Resp. [109].  She then filed a Motion [111] for Leave to File Supplemental Response to Defendants' Motion [107] for Summary Judgment, *see* Mot. [111], and attached a copy of her Supplemental Memorandum and Exhibits [111-1], *see* Supp. Mem. [111-1].  The Court granted the Motion [111] and directed Defendants to respond, *see* Text Only Order, June 24, 2025, which they did, *see* Supp. Reply [115].

Defendants argue that Plaintiff's FLSA and EPA claims are barred by the statute of limitations, which ran at the latest on May 28, 2023, two-years after Plaintiff received the last paycheck she alleges constituted "docked pay."  Mem. [108] at 8-10.  As for Plaintiff's discrimination and retaliation claims arising under Title VII and the ADEA, Defendants contend that Plaintiff has not shown that she suffered any adverse employment action based on her age or sex, and that she has

---

of 1993, 29 U.S.C. § 2601 et seq., and intentional infliction of emotional distress.  *See* Am. Compl. [33] at 7-31.  The Court dismissed these claims in an Order [98] granting in part Defendants' Motion [34] to Dismiss.  *See* Order [98] at 17.

failed to make a *prima facie* case of either discrimination or retaliation. *Id.* at 10-23. Turning to Plaintiff's wrongful termination claim under state law, Defendants point out that Plaintiff resigned and was not terminated, and that even if she was terminated, no exception to Mississippi's employment at-will doctrine applies. *Id.* at 23.

Plaintiff's Response [109] does not point to any evidence to rebut Defendants' positions, instead raising conclusory assertions that Defendants committed "egregious, strategically delayed and bad faith discovery abuses" which have "prejudiced Plaintiff's ability to gather and present material facts necessary to oppose summary judgment," such that their Motion [107] should be denied under Federal Rule of Civil Procedure 56(d). *See* Mem. [110] at 1-8.

But in her Supplemental Response [111-1], Plaintiff contends that the MDES Decision, her health benefits form, and emails from the Department of Labor support her position that her employment was terminated before she resigned. Supp. Mem. [111-1] at 4. She also claims that the Department of Labor found that her pay was "docked" and that this was done for purposes of discrimination and retaliation *Id.* at 6, 9. Plaintiff maintains that Defendants further discriminated and retaliated against her by demoting her and denying her promotions, *id.* at 7-8, and that they intentionally misdated her health benefits form so that her insurance would lapse, in retaliation for her filing EEOC Charges [107-1] and internal complaints, *id.* at 4-6.

Defendants counter that Plaintiff relies "on incompetent summary judgment evidence to contradict sworn testimony and evidence regarding the date she stopped working for Defendants." Supp. Reply [115] at 1. They continue that this applies to her other arguments as "Plaintiff's Supplemental Response falls well short of overcoming Defendants' Motion as she has not shown a genuine issue of material fact," *id.* at 5, and "Plaintiff cannot avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions," *id.* at 3. Defendants further maintain that Plaintiff has failed to point to evidence showing that Defendant's reasons for their employment decision were pretext for discrimination or retaliation. *Id.* at 3-4.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (quotations omitted). "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). "[T]he party opposing summary judgment is required to identify specific

evidence in the record and to articulate precisely how this evidence supports h[er] claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). Of relevance here, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 765 n.31 (5th Cir. 2024) (quotations omitted).

B.    Federal Rule of Civil Procedure 56(d)

As an initial matter, the Court observes that Plaintiff makes a number of conclusory accusations in her briefs about discovery issues, arguing that the evidence is "incomplete" and that for this reason the Court should deny summary judgment. *See* Mem. [110] at 1. To the extent these arguments could be liberally construed as a motion under Federal Rule of Civil Procedure 56(d), it should be denied. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it . . . ."). A request to stay summary judgment must articulate a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, exist and indicate how those facts would influence the outcome of the pending motion. *See Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). Plaintiff "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.*

Plaintiff has attached to her Memorandum [110] in support of her Response [109] her own Affidavits [110-16], [110-18], which make only general allegations that she cannot calculate damages without more discovery, *see* Aff. [110-16], and that Defendants have failed to adequately respond to discovery requests despite her good faith letters,[5] *see* Aff. [110-18]. These Affidavits [110-16], [110-18] are conclusory and do not specify what facts probably exist that will influence the outcome of Defendant's Motion [107].

And despite her claims, Plaintiff was nevertheless able to formulate arguments and submit documents in opposition to Defendant's Motion [107] in her Supplemental Memorandum [111-1]. *See* Supp. Mem. [111-1]. Moreover, it was Plaintiff's burden to prosecute her case and seek out evidence during discovery to support her claims. *See, e.g.*, *Blanks v. Byd*, No. 5:12-cv-112-DCB-RHW, 2012 WL 4770725, at *2 (S.D. Miss. Oct. 5, 2012) ("It is the Plaintiff's responsibility to prosecute this case."); *Miles v. Wal-Mart Stores*, No. CIV.A. SA05CA1068FB, 2006 WL 1149169, at *2 (W.D. Tex. Apr. 26, 2006) ("[I]t is plaintiff's burden to prosecute her claims against [a defendant]." (citing Fed. R. Civ. P. 41(b))). Discovery closed on March 21, 2025, and the record reflects that Plaintiff only served interrogatories, requests for production of documents, and requests for admissions. *See* Nots. [44], [45], [46], [54], [55], [56]. She failed to issue any subpoenas for documents and did

---

[5] Plaintiff claims she sent good faith letters to Defendants, but her Affidavit [110-18] does not state when she did so, leaving the placeholders of "[Date of First Letter]" and "[Date of Second Letter]" in the Affidavit [110-18] instead. *See id.* She did attach a Good Faith Letter [110-19] to her Response [109], but it was signed on April 22—without a specified year but presumably in 2025—which was three weeks after Defendants filed their Motion [107] for Summary Judgment and a day before Plaintiff filed her Response [109]. *See generally* Good Faith Letter [110-19]; Mot. [107]; Resp. [109].

not take any depositions, canceling the ones she had noticed.  *See* Reply [112] at 1.
Plaintiff did file one Motion [85] for Sanctions and to Compel in this case, see Mot.
[85], but it was denied without prejudice, *see* Order [89].  Plaintiff did not file any
other motion to compel, and to date she has not brought forth any credible evidence
to support her claims of discovery violations committed by Defendants.  In short,
the record belies her complaints about discovery, and any Rule 56(d) motion should
be denied.

C.    Plaintiff's FLSA and EPA Claims are Time-Barred

Defendants argue that Plaintiff's FLSA and EPA claims are time-barred
because her last allegedly "docked" paycheck was dated on May 28, 2021, and she
did not file suit until more than two years later, on August 29, 2023.  *See* Mem.
[108] at 8-10.  Plaintiff does not dispute that May 2021 was the latest that
Defendants were allegedly "docking her pay" and instead asserts that a three-year
statute of limitations should apply because the alleged "pay docking" was willful.
Supp. Mem. [111-1] at 6.

"There is a two-year statute of limitations for FLSA and Equal Pay Act
claims generally, but the limitations period is extended to three years for willful
violations." *Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x
359, 365 n.3 (5th Cir. 2011).  "The plaintiff bears the burden of demonstrating
willfulness" and a showing that a defendant had "[m]ere knowledge of the FLSA
and its potential applicability does not suffice" to meet this burden, nor does a
showing that a defendant's conduct was "merely negligent or unreasonable."

12

*Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015). Rather, to show a willful violation, a plaintiff must demonstrate that an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. . . ." *Id.* (omissions in original) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Unless Plaintiff can show that any allegedly improper paycheck reductions were willful, her EPA and FLSA claims cannot withstand summary judgment. *See Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). In an effort to do so, she offers several conclusory assertions and then cites to an assortment of exhibits without providing any explanation as to how they show any reductions or differences in pay between her and other employees were willful. *See* Supp. Mem. [111-1] at 6. Plaintiff has not pointed to where in these exhibits the Court is supposed to locate whatever evidence she believes supports her claims.[6] *See id.*

The Court is not required to comb through pages of documents without any direction as to what it is supposed to be looking for, and it will not do so here. *See Newsome*, 123 F.4th at 765 n.31 ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quotations omitted)). If this evidence truly supported

---

[6] At most, Plaintiff points to an email from a Department of Labor representative, but offers no explanation how this email supports her claim. *See* Supp. Mem. [111-1] at 6. As far as the Court can discern, she may be pointing to the email's reference to a reduction of hours because Plaintiff ran out of PTO. *See* DOL Email [111-1] at 24. But the email does not assign blame or make any claim of illegality against Defendants, and it does not support any inference that Plaintiff's health insurance lapsed because of any "reckless disregard for the matter of whether [Defendants'] conduct was prohibited by the statute." *Zannikos*, 605 F. App'x at 360. Thus, it is not sufficient to withstand summary judgment. *See* DOL Email [111-1] at 24.

Plaintiff's position—and as far as the Court can tell it does not—she bore the burden at summary judgment of explaining how it does so. As it stands, she has not pointed to any competent evidence showing that any alleged reductions or differences in pay between her and other employees were willful. Plaintiff's FLSA and EPA claims are therefore time-barred.

D.    <u>Plaintiff has not Created a Genuine Issue of Material Fact as to any Sex- or Age-Based Discrimination Claim Arising Under Title VII or the ADEA</u>

Plaintiff alleges that her performance reviews, salary, denial of promotion, demotions, wrongful termination, and a hostile work environment were all the result of sex- and age-based discrimination. *See* Am. Compl. [33] at 7-31. Plaintiff has not offered any direct evidence of discrimination and instead relies on circumstantial evidence. *See generally* Am. Compl. [33]. Title VII and ADEA claims based on circumstantial evidence are evaluated under the three-step, burden-shifting framework set forth in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (addressing ADEA); *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003) (addressing Title VII).

"The elements of a prima facie case of discrimination are identical under Title VII and the ADEA." *Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 308 (5th Cir. 2012). Though "[t]he requirements for a *prima facie* case vary slightly with the type of claim brought[,]" *Patrick*, 394 F.3d at 315, generally, to establish a *prima facie* case of age or sex discrimination, an employee must demonstrate "that (1) she is a member of a protected class; (2) she was qualified for the position she sought [or was employed in]; (3) she suffered an adverse employment action; and (4) others

similarly situated but outside the protected class were treated more favorably[,]"
*Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022)
(quotations omitted).  Under Title VII, a plaintiff is a member of a protected class if
any alleged discrimination was based on her race, color, religion, sex, or national
origin.  42 U.S.C. § 2000e-2(a).  And under the ADEA, the protected class consists of
individuals who are age forty years or older.  29 U.S.C. § 631(a); *Jackson v. Cal-W.
Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).  The parties do not dispute that
Plaintiff is within the protected class as defined by Title VII and the ADEA.  *See*
Am. Compl. [33] at 23-24; Mem. [108] at 10, 15-16.

To show an adverse employment action under Title VII and the ADEA, a
plaintiff need not show "discrimination with respect to an ultimate employment
decision" but instead only "that she was discriminated against, because of a
protected characteristic, with respect to hiring, firing, compensation, or the terms,
conditions, or privileges of employment—just as the statute says."  *Hamilton v.
Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023) (addressing Title VII) (quotations
omitted); *see also Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *6 (5th Cir.
Oct. 8, 2024) ("*Hamilton* . . . though decided in the Title VII context, appl[ies]
equally to ADEA discrimination claims.").  But under this framework, "[b]are
allegations of . . . discrimination, without more, are insufficient to create a genuine
dispute as to a material fact."  *Smith v. City of St. Martinville*, 575 F. App'x 435, 439
(5th Cir. 2014) (addressing Title VII); *see also Dees v. United Rentals N. Am., Inc.*,
505 F. App'x 302, 305 (5th Cir. 2013) (affirming summary judgment as to the

plaintiff's ADEA and Title VII claims because he "only made conclusory allegations that he was discriminated against").

Under *McDonnell Douglas*, once a plaintiff presents a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Louisiana*, 351 F.3d at 621. If a defendant does so, to survive summary judgment "the plaintiff must raise a genuine issue of material fact that shows the defendant's reason may be a pretext for discrimination." *Id.*

1.  <u>Plaintiff's Pay Discrimination Claims Fail Because she has not Shown That she was Paid Less Than a Similarly Situated Male Employee</u>

Plaintiff alleges that similarly situated male employees were paid more than she was, and that she was unfairly "docked" pay whereas male employees were not. *See* Am. Compl. [33] at 14, 16-17. Plaintiff does not assert that any disparities in pay were based upon her age. *See generally id.* To establish a *prima facie* case of sex-discrimination based on a disparity in pay, Plaintiff must establish "that she is a member of a protected class who was paid less than a non-member for work requiring substantially the same responsibility." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (quotations omitted) (addressing Title VII). "To make this showing, [Plaintiff] must offer evidence that her circumstances were nearly identical to those of a better-paid employee who is not a member of the protected class." *Id.* (quotations omitted).

Plaintiff has not directed the Court to any competent summary judgment evidence, nor has she even attempted to do so, showing that her circumstances were substantially similar, let alone nearly identical, to any male employee whose pay

differed from hers.  *Id.*; *see generally* Mem. [110]; Supp. Mem. [111-1].  At best she points to her supervisor, Joe Sullivan, and three meteorologists, but as Defendants point out these individuals were not in substantially similarly positions to those Plaintiff held, and Defendants have submitted evidence that Plaintiff was paid more than other employees who were in positions similar to hers.  *See* Mem. [108] at 13; *see also generally* Performance Reviews and Pay Increase Forms [107-4]; Pay Forms of Other Employees [107-15].  Plaintiff has not made any arguments or pointed to any evidence to show the contrary.  *See generally* Mem. [110]; Supp. Mem. [111-1].  Additionally, to the extent this claim is based on any improper allocation of paid time off ("PTO"), the record shows that Plaintiff's pay was not willfully or improperly reduced, but that she ran out of PTO, and thus, was not credited for a full workday when she took time off despite her lack of PTO.[7]  *See* PTO Records [111-1] at 66, 68.  Plaintiff has pointed to no evidence that controverts this, and any claim based on alleged disparities in pay should be dismissed.[8]

---

[7] The Amended Complaint [33] also alleges that "Defendants discriminatorily allocated COVID pay, denying and damaging Plaintiff," Am. Compl. [33] at 27, but no further explanation has been offered as to what this claim is and Plaintiff has not pointed to any evidence to support it, *see generally id.*; Mem. [110]; Supp. Mem. [111-1].

[8] At most, Plaintiff points to a Department of Labor email sent to Defendants regarding a mistake as to her insurance benefits.  *See* Supp. Mem. [111-1] at 6.  But the email only states that Plaintiff "provided paystubs to us showing she was docked hours of work previous to the timeframe of 06/01/2021."  *Id.* at 24.  This does not contradict Defendants' position, as they do not deny that Plaintiff was docked, but instead state that it was because she ran out of PTO, and they point to competent summary judgment evidence supporting their position which Plaintiff has not rebutted.  *See* Mem. [108] at 11-13; *see also* Time Off Detail and Explanation of PTO [107-10] at 7-9.

2.      Plaintiff's Title VII and ADEA Failure to Promote Claims Fail Because she
        has not Offered any Evidence Showing Defendants' Reasons were Pretextual

Plaintiff asserts that Defendants did not promote her to an anchor position

she applied for on the basis of her age and sex, and instead hired a younger male

employee.  *See* Am. Comp. [33] at 23-24.  To establish a *prima facie* case of

employment discrimination in the failure to hire or promote context, "a plaintiff

must ultimately show that '(1) [s]he belongs to a protected class; (2) [s]he applied for

and was qualified for a position for which applicants were being sought; (3) [s]he

was rejected; and (4) a person outside of h[er] protected class was hired [or

promoted] for the position.*" Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x

242, 244-45 (5th Cir. 2017) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp.,

Inc.*, 482 F.3d 408, 412 (5th Cir. 2007)).  Where an employer takes the position that

an individual was not qualified, "only objective requirements may be used[,] . . .

[o]therwise, an employer could utilize wholly subjective standards by which to judge

its employees' qualifications and then plead lack of qualification when its promotion

process . . . is challenged as discriminatory." *Louisiana*, 351 F.3d at 622 (quotations

omitted).

Here, the Court is unable to evaluate whether Plaintiff was qualified for the

anchor position because Defendants have not submitted a description of the

position's objective requirements.  *See generally* Mem. [108], Reply [112]; Supp.

Reply [115].  But because Defendants have offered a legitimate nondiscriminatory

reason for not promoting Plaintiff—her poor job performance—and Plaintiff has not

responded with any competent summary judgment evidence creating a genuine

issue of material fact that this reason was pretextual, this claim should be dismissed. *See Ajao v. Bed Bath & Beyond, Inc.*, 265 F. App'x 258, 263 (5th Cir. 2008) ("A plaintiff relying on pretext must produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons." (quotations omitted)).

Defendants have submitted substantial summary judgment proof highlighting Plaintiff's poor performance, including her performance reviews, which documented a need to improve on her ability to receive constructive criticism, a propensity for making mistakes, a lack of professionalism and time management, a failure to communicate effectively with her coworkers and respond to her supervisor, and a failure to inform her supervisor when she was going to miss work. *See generally* Performance Reviews and Pay Increase Forms [107-4]; 2019 Write-up [107-6]; COO Berry Letter [107-8]; Internal Termination Report [107-12]. Plaintiff has not pointed to any evidence disputing the veracity of this evidence. *See generally* Mem. [110]; Supp. Mem. [111-1]. Even if she had, "an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 900 (5th Cir. 2025) (quotations omitted).

At summary judgment, Plaintiff was required to make a showing that any nondiscriminatory reason offered by Defendants was pretextual; instead she responds with only conclusory assertions, untethered to any actual evidence, that she was not promoted because of her sex and age. *See generally* Mem. [110]; Supp.

Mem. [111-1].  Plaintiff has pointed to no evidence[9] that her performance reviews were incorrect, or that Defendants' use of her reviews to justify not promoting her was pretextual.  As such, any discrimination claim based on a failure to promote should be dismissed.  *See Mire v. Texas Plumbing Supply Co.*, 286 F. App'x 138, 143-44 (5th Cir. 2008) (finding that the plaintiff's "bare assertions that she did not perform poorly is not sufficient to raise a fact issue as to the legitimacy of [defendant's] proffered reasons" because "it is not sufficient for [the plaintiff] to point to the lack of documentation produced by [the defendant]; rather, to rebut [defendant's] reasons, she was required to provide evidence demonstrating the falsity of each of [defendant's] reasons"); *Ajao*, 265 F. App'x at 263 (affirming summary judgment dismissal of race discrimination claims where the defendant cited the plaintiff's poor performance as the reason for not promoting him and the plaintiff provided no evidence to rebut this); *Thompson v. Cajun Deep Foundations, LLC*, No. 3:12-cv-587-TSL-JMR, 2013 WL 5517901, at *3 (S.D. Miss. Oct. 3, 2013) (holding that a plaintiff's affidavit stating he had satisfactory performance was insufficient to rebut the defendant's nondiscriminatory reason for terminating the plaintiff's employment).

---

[9] Plaintiff did attach to her Response [109] her three EEOC Charges [107-1] and the entire record from the EEOC.  *See generally* EEOC Charge 1 & Record [107-2]; EEOC Charge 2 & Record [107-2]; EEOC Charge 3 & Record [107-4].  These documents are sixty-four, eighty-four, and fifty pages long, respectively.  *See generally* EEOC Charge 1 & Record [107-2]; EEOC Charge 2 & Record [107-2]; EEOC Charge 3 & Record [107-4].  Plaintiff has provided no page citations or any guidance as to what within these documents supports her case.  *See generally* Mem. [110]; Supp. Mem. [111-1].  It is not the Court's job to search through voluminous documents and establish their relevance on Plaintiff's behalf, and thus, they are insufficient to support her claims.  *See Newsome*, 123 F.4th at 765 n.31 ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quotations omitted)).

3.    Plaintiff has not Shown That Defendants' Justifications for her Changes in
       Position Were Pretext for Age or Sex Discrimination

Plaintiff takes issue with the changes in her job positions throughout her

employment, arguing they constituted demotions, and most notably alleging that

she was given the title of "Senior Reporter" because of her age.  *See* Am. Compl. [33]

at 27-28.  To establish a *prima facie* case of discrimination based on a demotion,

Plaintiff must prove that she: "(1) suffered a demotion; (2) she was qualified for the

position she occupied; (3) she was a member of a protected class at the time of

the demotion; and (4) she was replaced by a person outside of that protected class."

*Caldwell v. Univ. of Houston Sys.*, 520 F. App'x 289, 293 (5th Cir. 2013).

Over time, Defendants moved Plaintiff from assignment editor to morning

news manager, and then back to assignment editor.  Culumber Resume [111-1] at

72.  Her position was then changed to multimedia journalist, and finally she

received the title of senior reporter.  *Id.*  Defendants maintain that these changes

were not demotions.  *See* Mem. [108] at 15-17.  But under the standard set forth in

*Hamilton*, when viewed in a light most favorable to the non-movant, it is not clear

that these changes were not demotions.  *See Hamilton*, 79 F.4th at 506

(highlighting that adverse employment actions include discriminatory infringement

upon "the terms, conditions, or privileges of employment that did not involve a

discharge, loss of pay, or other concrete effect on his or her employment status"

(alterations in original and quotations omitted)).  The Court need not resolve this

question, however, because even if these changes constituted demotions, Defendants

have offered legitimate nondiscriminatory reasons for them, *see* Mem. [108] at 15-

17, and Plaintiff has not created a fact question that these reasons were pretextual, *see generally* Mem. [110]; Supp. Mem. [111-1].

Specifically, Defendants contend that Plaintiff's positions changed as it attempted to deal with vacancies at WXXV-TV. Mem. [108] at 17. Plaintiff was first moved from assignment editor to morning news manager to address this problem; then she was returned to assignment editor as "a remedy to address Plaintiff's and Goodwin's internal cross-complaints against one another, who were both female – for incidents and aggravation that began all the way back in August 2019 that were re-urged by Plaintiff and Goodwin in December 2019." *Id.* at 20; COO Berry Letter [107-8] at 2. Defendants have explained that Plaintiff's move to morning news manager was always meant to be temporary as a way to assist with the transition of more junior employees into new roles, and that once Defendants were comfortable with their transition, Plaintiff would return as assignment editor. COO Berry Letter [107-8] at 1-2. For Plaintiff's move to senior reporter, Defendants state that the title was given out of acknowledgement that she had more experience and received a higher compensation than the other multimedia journalists they employed. Mem. [108] at 17.

As the Court has already explained, "[a] plaintiff relying on pretext must produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons." *Ajao*, 265 F. App'x at 263 (5th Cir. 2008). Plaintiff has not done so; she has not pointed to any competent summary judgment evidence that rebuts any of the reasons proffered by Defendants. *See generally* Mem. [110]; Supp. Mem. [111-

1].  And it is not the Court's responsibility to build a record and point to evidence to support her case.  *See United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record." (quotations omitted)).  Despite having almost eight months to conduct discovery, *see* Case Management Order [21] (entered July 24, 2024); Text Only Amended Case Management Order, February 11, 2025 (setting the final discovery deadline as March 21, 2025), Plaintiff has not taken any depositions, provided any affidavits beyond her own, or otherwise developed or pointed to a record to rebut Defendants' nondiscriminatory reasons for her changes in position.  Any discrimination claim based on "demotions" or changes in position should be dismissed.

4.    Plaintiff has not Established a *Prima Facie* case of Discrimination Based on her Alleged Termination

Plaintiff claims that Defendants wrongfully terminated her on May 31, 2021, "without just cause in an act of retaliation and discrimination," but she does not specify whether this was based on her age or sex.  *See* Am. Compl. [33] at 26.  To establish a *prima facie* case of wrongful termination under Title VII or the ADEA, a plaintiff must demonstrate that: "1) she belongs to a protected group; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) she was replaced by someone outside of her protected group or a similarly situated employee outside of her protected group was treated more favorably."  *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022) (addressing the elements for wrongful termination under Title VII); *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (stating the same substantive elements for the ADEA).

23

Plaintiff's Resignation Letter [107-11], which is dated June 1, 2021, asked Defendants to "[p]lease accept this formal letter of resignation from my employment here at WXXV-TV News 25, effective immediately, considering the circumstances." Resignation Letter [107-11] at 1. Despite this, Plaintiff claims that she was wrongfully terminated on May 31, 2021. *See* Am. Compl. [33] at 29-30; Mem. [110] at 2; Supp. Mem. [111-1] at 4. As evidence, Plaintiff points to the MDES Decision, her health benefits form, and emails from a Department of Labor representative regarding the termination of her health benefits as of May 31, 2021. *See* Supp. Mem. [111-1] at 4-6.

a.    Health Benefits Form

Plaintiff argues that her health benefits form lists May 31, 2021, as her termination date. But she misunderstands what the form reflects; it indicates that her health benefits were terminated on May 31, 2021, not that her employment was terminated. *See* Health Benefits Form [111-1] at 20. Moreover, Defendants have pointed to competent evidence explaining that this was the result of an administrative error caused by the fact that May 31, 2021, was a holiday and Plaintiff did not work any hours on June 1, 2021. *See* Insurance Email [111-1] at 90; Internal Termination Report [107-12]; Dec. 2021 Letter [107-16] at 1; Dec. 2021 DOL Email Thread [112-1] at 2-6. Plaintiff has provided no evidence to rebut Defendants' explanation.

b.    Department of Labor Email

Plaintiff also points to the Department of Labor representative's emails and claims they take the position that her employment was terminated.  *See* Supp. Mem. [111-1] at 6.  But a reading of these emails reflects they were sent to inquire why the termination date on Plaintiff's health benefits form was listed as May 31, 2021, when she had resigned on June 1, 2021.  *See id.* at 24.  And contrary to Plaintiff's argument, the email explicitly stated that her employment was not terminated:

> [t]o be clear, there is no confusion on our part as to how Mrs. Culumber's employment ended with her former employer WXXV-TV 25.  Mrs. Culumber has been very honest about the fact that she resigned from her former employer and provided us with a copy of her resignation letter dated June 1, 2021 as part of her appeal (along with more than 200 other pages of supporting documentation with different concerns she has had with her time at WXXV-TV 25).

Dec. 2021 DOL Email Thread [112-1] at 6.

Thus, this evidence is insufficient to create a material fact question whether Plaintiff resigned or was terminated.

c.    MDES Decision

Plaintiff next points to the MDES Decision [111-1], which states that Plaintiff "was terminated on May 31, 2021" and that Plaintiff "did not initiate the leave from the employment."  MDES Decision [111-1] at 17.  "[S]tate administrative findings may be entered into evidence at trial." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 114 (1991).  But the question remains whether the MDES Decision can create a genuine issue of material fact to defeat summary judgment, a

question that neither Mississippi Code Annotated § 71-5-531 nor any relevant caselaw has squarely addressed. *See* Miss. Code Ann. § 71-5-531.

Here, the MDES Decision [111-1] does not specify what evidence was presented and what it based its ruling on.[10]  *See* MDES Decision [111-1] at 17-18. And the specific question before the MDES was not whether Plaintiff was wrongfully terminated, but whether she was entitled to "benefits based on the reason for separation from employment and whether the employer's experience rating record is chargeable for benefits which may be paid to the claimant." *Id.*

Even if the MDES Decision [111-1] is sufficient to create a fact question on whether Plaintiff resigned or was terminated, that does not end the inquiry. *See Harris*, 27 F.4th at 1123; *Owens*, 33 F.4th at 825.  To establish a *prima facie* case, Plaintiff must also show that she was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age or protected class. *See Owens*, 33 F.4th at 825; *see also Harris*, 27 F.4th at 1123.  At no point throughout this litigation has Plaintiff identified any younger or male individual who replaced her, *see* Am. Compl. [33]; Resp. [109]; Mem. [110]; Supp. Mem. [111-1], which is an essential element of her *prima facie* case, *see Owens*, 33 F.4th at 825; *see also Harris*, 27 F.4th at 1123.  Nor has she pointed to any evidence that any termination was due to her age or gender.  *See* Mem. [110]; Supp. Mem. [111-1].  And to the extent her deposition has been provided to the Court, her

_____

[10] This also goes to whether it has any preclusive effect.  *See Henderson v. Jones Cnty. Sch. Dist.*, No. 2:18-cv-188-KS-MTP, 2021 WL 3232889, at *5 (S.D. Miss. July 29, 2021) ("The ALJ's decision includes no discussion of the specific evidence presented at the hearing.  Therefore, the Court has no idea whether his decision was supported by evidence.").

testimony does not offer any details to support her wrongful termination claim.  *See generally* Culumber Dep. [107-13].  Defendants' Motion [107] should be granted as to Plaintiff's wrongful termination claim.

Finally, to the extent Plaintiff is attempting to bring a claim under state law for wrongful termination based on discrimination, the Mississippi Supreme Court has held that no such claim exists in Mississippi; a plaintiff advancing a claim based on age or sex discrimination must do so under Title VII or the ADEA.  *See S. Farm Bureau Life Ins. Co. v. Thomas*, 299 So. 3d 752, 757-58 (Miss. 2020).  Any state-law wrongful termination claim should likewise be dismissed.

5.    Plaintiff has not Supported her Hostile Work Environment and Sexual Harassment Claims

Plaintiff asserts that she was sexually harassed and subjected to a hostile work environment because in January 2021, "Goodwin's boyfriend entered the newsroom where the Plaintiff and others were working and proceeded to yell and curse at the Plaintiff, making physically threatening gestures toward the Plaintiff." Am. Compl. [33] at 15.  She claims Defendants did nothing to mitigate this conduct. *See id.*  "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009).

> To survive summary judgment on a hostile work environment claim, a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he suffered unwelcomed harassment; (3) the harassment was based

on h[er] membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action.

*Whittington v. Harris Cnty., Texas*, No. 24-20172, 2025 WL 1864956, at *5 (5th Cir. July 7, 2025) (quotations omitted). "The work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quotations omitted). The Court is to "consider the totality of the employment circumstances to determine whether an environment is objectively hostile." *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2024) (alterations in original and quotations omitted).

As an initial matter, Plaintiff has not defended her hostile work environment claim in her briefs, nor has she pointed to any competent evidence to support it, *see generally* Mem. [110]; Supp. Mem. [111-1], which was her burden at summary judgment, *see RSR Corp.*, 612 F.3d at 858 ("the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports h[er] claim."). On that basis alone Plaintiff has abandoned this claim and summary judgment is appropriate. *See Yates v. Stalder*, 122 F. App'x 714, 717 (5th Cir. 2004) (finding that parties abandon a claim when they fail to include it in their oppositions to summary judgment); *Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001) (same).

Moreover, there is no competent evidence in the record that any of the acts she complains of were objectively based on her membership in any protected class.

In fact, when asked in her deposition to describe the events she considered workplace harassment, Plaintiff refused to answer any questions about whether any of the alleged harassment was connected to either her age or her sex. *See* Culumber Dep. [107-13] at 10. Instead, she testified that she could not say what motivated the alleged harassment. *See id.* If Plaintiff cannot articulate or testify to whether any alleged harassment was based on her membership in a protected class, then no reasonable juror could find in her favor on this claim.

Plaintiff has not defended her hostile work environment claim, and there is no genuine dispute as to any material fact regarding whether any alleged harassment was based on her age or sex. This claim should be dismissed.

E.    Plaintiff's Retaliation Claims Cannot Withstand Summary Judgment

The *McDonell Douglas* framework also applies to retaliation claims. *Shahrashoob v. Texas A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025) (Title VII); *Kopszywa v. Home Depot USA, Inc.*, 620 F. App'x 275, 280 (5th Cir. 2015) (Title VII and ADEA). A plaintiff establishes a *prima facie* case of retaliation "by showing that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (quotations omitted). If a plaintiff can establish these elements, a defendant may still avoid liability by proffering a legitimate nonretaliatory reason for any adverse employment action. *Id.* The plaintiff must then show that a defendant's reason is pretextual. *Id.*

1.      <u>Plaintiff has not Created a Fact Issue as to Whether Defendants'
Nonretaliatory Justification for the Lapse in her Health Insurance was
Pretextual</u>

Plaintiff primarily argues that Defendants retaliated against her by listing

May 31, 2021, as the end of her employment, instead of June 1, 2021, so that her

health benefits would lapse. *See* Supp. Mem. [111-1] at 4-6. Defendants maintain

that this was due to an administrative error. *See* Health Benefits Form [111-1] at

20; Insurance Email [111-1] at 90; Internal Termination Report [107-12] at 1; Dec.

2021 DOL Email Thread [112-1] at 2-6; Dec. 2021 Letter [107-16] at 1. And they

have submitted evidence showing that once they were made aware of this error by

the Department of Labor, they promptly corrected it and offered to cover Plaintiff's

insurance premiums from June through September. *See* Dec. 2021 DOL Email

Thread [112-1] at 2-6. Plaintiff believes this is insufficient because she still would

have had to pay the premiums for October, November, and December all at once.

*See* Supp Mem. [111-1] at 5.

But the question is whether Plaintiff has proffered any competent evidence

creating a triable fact issue that Defendants' nonretaliatory reason was pretextual.

*See Outley*, 840 F.3d at 219. She has not, for instance, pointed to any evidence

showing that had she not filed any EEOC Charges [107-1], her health insurance

would not have lapsed. Nor has she pointed to any evidence indicating that

Defendants' proffered reason for the lapse in benefits is false. *See* Mem. [110];

Supp. Mem. [111-1]. In fact, as Defendants point out, certain evidence Plaintiff

attached to her Supplemental Memorandum [111-1] supports the legitimacy of their

explanation. *See* Supp. Reply [115] at 3 (citing Insurance Email [111-1] at 90). In the Insurance Email [111-1], referencing the error with her insurance, Plaintiff thanked Defendants' human resources director for "looking into – and handling – this tough situation." Insurance Email [111-1] at 90. The record evidence is insufficient to show pretext and any retaliation claim based on the discrepancy in Plaintiff's insurance benefits should be dismissed. *See, e.g.*, *id.* at 219-20 (holding that the connection between a plaintiff's protected activity and an adverse employment action was "too attenuated," such that she could not create a triable fact issue as to whether the defendant's nonretaliatory reason was pretextual because she had "not provided evidence that 'but for' her complaints . . . , [the defendant] would have given a pay raise.").

2.    Plaintiff has not Created a Genuine Issue of Material Fact That any Poor Performance Reviews or Write-Ups Were Adverse Employment Actions

Plaintiff alleges that she received poor write-ups and performance reviews in retaliation for filing internal complaints and EEOC Charges [107-1]. *See* Am. Compl. [33] at 7-14. But "written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity." *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015); *see also Spencer v. Shell Expl. & Prod. Co.*, No. 24-20173, 2025 WL 855314, at *3 (5th Cir. Mar. 19, 2025) (stating the same post-*Hamilton*).

With respect to write-ups, in 2019 Plaintiff was written up for failing to notify her supervisor that she was not coming to work on a scheduled workday,

which violated Defendants' company policy and employee handbook. *See* 2019

Write-up [107-6] at 1. This is colorable grounds for a write-up and Plaintiff has not

provided any competent evidence to rebut it. To the extent Plaintiff seeks to assert

any claim based on her 2016 write-up for insubordination, such a claim was not

exhausted because EEOC Charge 1 stated that any alleged discrimination and

retaliation committed by Defendants began on December 10, 2019, almost three

years after Plaintiff received this write-up, *see* EEOC Charges [107-1] at 1; *see also*

*Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 569 (5th Cir. 2012) (stating that

any claim under the ADEA must first be within the scope of what could reasonably

be investigated as a result of the allegations in an EEOC charge); *Pacheco v.*

*Mineta*, 448 F.3d 783, 787-89 (5th Cir. 2006) (stating the same under Title VII), and

Plaintiff has not pointed to any evidence showing that this write-up was based on

discriminatory intent or was otherwise unfounded, *see generally* Mem. [110]; Supp.

Mem. [111-1]. Also, because her EEOC Charges [107-1] were filed almost three

years after the 2016 write-up, any claim based on that write-up would be untimely.

*See Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018) ("Title VII plaintiffs

are required to exhaust their administrative remedies by filing a charge of

discrimination with the Equal Employment Opportunity Commission within 180

days of the alleged discrimination."); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452,

455 (5th Cir. 2011) (stating the same under the ADEA). In sum, neither write-up

can serve as an adverse employment action.

As for her negative performance reviews, even if they could constitute an adverse employment action as part of a *prima facie* case, which they cannot, *see Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 , 427 n.19 (5th Cir. 2017) ("[A] negative performance evaluation does not constitute an adverse employment action actionable under Title VII[.]" (quotations omitted)), Plaintiff has not pointed to any competent summary judgment evidence to show that they were inaccurate or were not well-founded, *see generally* Mem. [110]; Supp. Mem. [111-1]; *see also Newsome*, 123 F.4th at 765 n.31 ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quotations omitted)).

Finally, even if Plaintiff had shown that any poor performance reviews or write-ups were unfounded, they plainly did not dissuade her from engaging in protected activity, as she continued to file EEOC Charges even after receiving them. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (holding that a written warning was not an adverse employment action because it "would not have dissuaded a reasonable worker from making or supporting a charge of discrimination" since the plaintiff filed an EEOC charge of discrimination several weeks after receiving it).  Thus, any retaliation claim based on poor performance reviews or write-ups should be dismissed.[11]

---

[11] Plaintiff also makes some general allegations related to how her internal complaints were treated more harshly than those of other male employees, and that male employees' alleged bad acts were not treated as harshly as hers.  *See* Am. Compl. [33] at 9-10, 20-23.  But she points to no evidence in the record to support this claim, whether that be affidavits, deposition testimony, or any other form of competent evidence.  *See generally* Mem. [110]; Supp. Mem. [111-1].

3.    <u>Plaintiff's Remaining Retaliation Claims Fail for the Reasons Already Addressed by the Court</u>

Plaintiff asserts that many of the alleged discriminatory acts already addressed by the Court were also in retaliation for her filing EEOC Charges [107-1]. As the Court has already determined, Plaintiff's salary discrepancy allegations cannot establish the *prima facie* element that Defendants took an adverse employment action against her because she has not provided any evidence that she was actually paid less than similarly situated male employees.  Her failure to promote and demotion claims cannot survive because she has not shown Defendants' nonretaliatory reasons were pretextual.  There is a lack of competent evidence supporting any hostile work environment claim, let alone evidence that any alleged harassment was retaliatory.  And Plaintiff's wrongful termination claim cannot succeed because even if she was actually terminated, Defendants have proffered a non-retaliatory justification which Plaintiff has not shown to be false or pretextual.  In sum, Plaintiff's Title VII and ADEA retaliation claims should be dismissed.[12]

---

[12] The Amended Complaint [33] claims that Defendants fraudulently "backdated" certain documents, in part as retaliation.  *See* Am. Compl. [33] at 11-13, 22; *see also generally* Mem. [110].  But the Court already dismissed Plaintiff's claims for false statements, fraud, false light, and misrepresentation.  *See* Order [98] at 7-10, 17.  Even if these allegations could somehow serve as a basis for a retaliation claim, Plaintiff has not pointed to any actual evidence to support them.  *See generally* Mem. [110]; Supp. Mem. [111-1].

III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Morris Network of Mississippi, Inc., doing business as WXXV-TV, Morris Multimedia, Morris Multimedia, Inc., and Morris Network, Inc.'s Motion [107] for Summary Judgment is **GRANTED**, and Plaintiff Toni Miles Culumber's claims are **DISMISSED WITH PREJUDICE**.  The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 14th day of August, 2025.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE